IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CHRISTOPHER K.,[1] | No. 6:22-cv-00412-HZ |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

Sherwood J. Reese
Luke Moen-Johnson
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, OR 97401

    Attorneys for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

L. Jamala Edwards
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Christopher K. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on March 23, 2018, alleging an onset date of March 19, 2018. Tr. 181.[2] Plaintiff's date last insured ("DLI") is December 31, 2022. His application was denied initially and on reconsideration. Tr. 86, 87-88.

On February 25, 2021, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 36-68. On March 31, 2021, the ALJ found Plaintiff not disabled. Tr. 15-30. The Appeals Council denied review. Tr. 1-6.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on anxiety, depression, and Asperger syndrome. Tr. 203. At the time of his alleged onset date, Plaintiff was 38 years old. Tr. 181. Plaintiff has a high-school education and past relevant work experience as a cleaner. Tr. 29.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 7.

**SEQUENTIAL DISABILITY EVALUATION**

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other

work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S DECISION

At step one, the ALJ noted Plaintiff has worked as a cleaner for 12.5 hours per week since December 2019, but concluded "this work activity [does] not rise to the level of substantial gainful activity," and, therefore, Plaintiff has not engaged in substantial gainful activity after his March 19, 2018 alleged onset date. Tr. 17. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "obesity, lumbar degenerative disc disease, attention deficit hyperactivity disorder, generalized anxiety disorder, major depressive disorder, autism spectrum disorder, history of panic disorder, and cyclothymia." Tr. 18. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 18. The ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> he can frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance and kneel; and occasionally stoop, crouch, and crawl. The claimant can have no more than occasional incidental coworker contact and no public contact. He can persist at simple, routine, repetitive tasks, (someone who can apply commonsense understanding to carry out detailed but uninvolved instructions, or unskilled work that has a reasoning level consistent with two or less); can make simple work-related decisions, perform work with few, if any, changes in the workplace, and no assembly-line pace work.

Tr. 20. At step four, the ALJ concluded that Plaintiff could perform his past relevant work. Tr. 29. In the alternative, the ALJ found at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as marker; routing clerk; and "assembler, small products I." Tr. 30. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 30.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff contends the ALJ erred when she (1) partially rejected Plaintiff's testimony; (2) partially rejecting the lay-witness statements of Plaintiff's wife, Christy K., and mother, Vicki N.; and (3) found the opinions of Peter Powers, Ph.D., Scott Alvord, Psy. D., and Daniel Bentley, PA-C, to be unpersuasive.

**I.    Subjective Symptom Testimony**

Plaintiff alleges the ALJ erred when she partially rejected Plaintiff's testimony.

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom

evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff testified at the hearing that he has worked 12.5 hours per week as a night janitor since December 2019. Plaintiff stated he worked previously as a janitor for 14 years with Willamette Valley Cleaning, which is an organization that "hire[s] people with disabilities." Tr. 54. Plaintiff stopped working in March 2018 because he became overwhelmed with work; had a confrontation with a coworker; and his wife, fearing he was going to harm himself, took him to the hospital. Tr. 47-49. Plaintiff has "sleep problems" and although Ambien helps him to

fall asleep he "never feel[s] rested." Tr. 55. Plaintiff takes medication for depression, but it does not "seem to be helping." Tr. 55. Plaintiff suffers from anxiety, has "panic attacks or anxiety attacks" and gets overwhelmed easily "almost every night at work." Tr. 56. In his part-time job Plaintiff struggled to get along with his coworker before his coworker left because "he was really hard to read," which was exacerbated by wearing masks due to COVID. Tr. 57. Plaintiff testified he has "trouble reading people in general" due to his Aspergers and this has caused him to have problems at work. Tr. 57. Plaintiff testified that on a typical day he "is on [his] computer a lot to distract" himself and otherwise is sleeping or trying to sleep. Tr. 51. Plaintiff browses the internet and watches YouTube videos. Tr. 52. Plaintiff can only go to the grocery store a night because going during the day gives him panic attacks. Plaintiff can prepare simple meals, but he has to "have stuff written down." Tr. 52.

On May 5, 2020, Plaintiff completed an Adult Function Report in which he noted he has "constant, extreme anxiety about being around people and stressful encounters with managers left [him] feeling suicidal and Aspergers makes this even worse." Tr. 266. Plaintiff stated that on a typical day he gets dressed, goes "to work for 2.5 hours," comes home "exhausted," goes to bed and "tr[ies] to sleep for [the] next 15+ hours." Tr. 266. Plaintiff noted he prepares simple foods once a day; does laundry once a week; and goes only to the grocery store, work, and doctor appointments because he is too tired to do more chores and too anxious to go other places. Tr. 268-70. Plaintiff reported he "quickly forg[ets] spoken instructions," "panic[s] and overreact[s]" to authority figures, and cannot cope with stress or changes in routine. Tr. 271-72.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical

evidence and other evidence in the record." Tr. 21. Specifically, the ALJ noted Plaintiff "is able to work through [his panic attacks]" at his part-time job and he "manages to get things done even when having difficult feelings" and that Plaintiff "struggled with taking medications long enough to see a benefit." Tr. 23, 25. The ALJ's reasoning, however, is unsupported by the record. For example, Plaintiff's job is 2.5 hours per night and does not undermine his testimony that "his mental impairments would worsen if he had to work full time." Tr. 66-7. In fact, the record reflects Plaintiff stopped working full time on March 26, 2018, when he sought emergency treatment for increased depressive symptoms, anxiety, and suicidal ideation. Kirk Jacobson, M.D., examined Plaintiff on March 26, 2018 and noted Plaintiff "demonstrated impaired memory" and presented with "tangential thought process, racing thoughts, decreased attention span, impaired insight, paranoid ideations, delusions, suicidal tendency, and a preoccupation with violent thoughts." Tr. 467, 468. On April 11, 2018, Plaintiff underwent an initial psychological evaluation with Kelly Henry, PMHNP, and reported he began to have suicidal ideation and thoughts of self harm due to his work. Throughout his treatment with Henry it was noted that Plaintiff had "rambling, vague, and circumstantial" thought processes, high anxiety levels, and depression. Tr. 492, 494, 496. In August 2018 Plaintiff reported to Henry that his "panic attacks have been through the roof" and he is hypervigilant. Tr. 500.

In addition, the record reflects Plaintiff tried various medications but they were ineffective and in September 2018 Henry noted Plaintiff's issues "may not be something medications can fix." Tr. 502. In September 2019 Daniel Bentley, PA-C, noted "[i]t may be that Plaintiff is not a good candidate for medications." Tr. 656. In February 2021 Bentley noted Plaintiff "has tried almost every antidepressant, with more than adequate trial durations," having "augmented his medications with mood stabilizers, with anxiolytics, [and] sleep medications"

without significant improvement. Tr. 578-9. The record, therefore, does not support the ALJ's assertion that Plaintiff failed to take medications "long enough to see a benefit." Tr. 25.

In addition, Plaintiff began an intensive outpatient program to treat his persistent depressive disorder in January 2019. Throughout his treatment Plaintiff was often reported to be emotionally dysregulated, confrontational, defensive, overbearing, resistive, and "function[ing] within the scope of many cognitive distortions and presented with slowed and tangential thought processes and depressed and anxious mood. Tr. 576, 578, 581, 586. Ultimately on April 3, 2019, Plaintiff's therapy was terminated "as a result of . . . nonmaleficence." Tr. 588. The Commissioner asserts that because Plaintiff declined to participate in group therapy after he was discharged from individual therapy Plaintiff declined "appropriate" treatment, and, therefore, cannot seek benefits. Regarding Plaintiff's termination from therapy, however, Paul Davis, QMHP, noted Plaintiff made "minimal to no progress in treatment and [was] assessed as being triggered and incited by an escalation of symptoms while in therapy." Tr. 588. Accordingly, it is questionable whether group therapy would have been "appropriate" treatment. In addition, despite declining group therapy, Plaintiff continued to receive individual therapy. Specifically, in February 2019 Plaintiff began seeing Bentley and throughout treatment Plaintiff presented as "palpably anxious" and depressed. *See, e.g.,* Tr. 639-40, 641, 643, 645. In June 2019 Bentley noted despite taking medication Plaintiff's "anxiety and depression remain[ed] very difficult to treat." Tr. 648.

The Court concludes on this record that the ALJ erred when she partially rejected Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms because the ALJ did not provide specific, clear, and convincing reasons supported by substantial evidence in the record for doing so.

9 – OPINION & ORDER

**II.      Lay Witness Testimony**

Plaintiff alleges the ALJ erred when she failed to give legally sufficient reasons for partially rejecting the lay-witness statements of Plaintiff's wife, Christy K., and mother, Vicki N.

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. § 404.1529(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. § 404.1520c(d). Under the new regulations, however, the ALJ must still articulate their assessment of lay witness statements. *Tanya L.L. v. Comm'r Soc. Sec.*, 526 F.Supp.3d 858, 869 (D. Or. 2021).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds* by 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id.* Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id.* at 1117, 1122.

On November 8, 2018, Christy K., completed a Third Party Adult Function Report in which she noted "everything makes [Plaintiff] anxious - small talk, interactions w/co-workers,

change in tasks. . . . With Aspergers + now anxiety + depression being around people is very stressful." Tr. 240. Christy K. stated Plaintiff "spends day + night trying to sleep. If he has an appointment he gets very little sleep for days up to the appointment + it takes awhile to mentally prepare." Tr. 241. Christy K. noted most of Plaintiff's medications "do nothing or make him groggy" and he needs to be reminded to take them. Tr. 242. Christy K. indicated Plaintiff does not go out because "[e]verything (sounds, people, traffic, prices, forgetting something) causes him anxiety." Tr. 243. Plaintiff prefers written instructions and "constantly has to double check items and order." Tr. 246. Plaintiff is "easily intimidated," struggles "to read people, feels talked down to," and "misunderstands" authority figures. Tr. 246. In addition, Plaintiff has tried numerous medications and "they have had not effect or side effects that outweighed the benefits. The things that might help a neurotypical person deal with depression are the things that aggravate his anxiety because of Aspergers." Tr. 247. On November 18, 2018, Christy K. completed a second Third Party Adult Function Report that was largely consistent with her November 8, 2018 Report. Christy K. also noted, however, that Plaintiff's "Aspergers makes it difficult for him to read people or communicate clearly. He is very agitated in all social situations + does not deal well with change." Tr. 248. On February 9, 2021, Christy K. submitted a letter in which she noted Plaintiff's "Aspergers sometimes makes it very difficult to understand what he means" and "everyday things send [Plaintiff] over the edge most days." Tr. 304. "Even working 12.5 hrs a week has been extremely difficult for [Plaintiff]. He spends all day trying to sleep then, after work, he is in his den trying to distract himself from being anxious, depressed, and exhausted until he can take his meds and go to bed." *Id*.

On January 14, 2021, Plaintiff's mother, Vicki N., submitted a letter in which she detailed issues from Plaintiff's childhood and noted "change is exceedingly difficult for" Plaintiff and he has difficulty with "general conversation." Tr. 302.

The ALJ considered the statements of Christy K. and Vicki N., but "found them neither inherently valuable, nor persuasive when compared to the objective medical evidence." Tr. 28. Christy K. and Vicki N.'s statements are substantially similar to Plaintiff's testimony. The Court has already concluded the ALJ erred when she partially rejected Plaintiff's testimony because the ALJ failed to provide support for her opinion based on substantial evidence in the record. The Court also concludes on the same basis that the ALJ erred when she rejected Christy K. and Vicki's statements.

### III. Medical Opinion Evidence

Plaintiff contends the ALJ erred when she found the opinions of Peter Powers, Ph.D.; Scott Alvord, Psy. D.; and Daniel Bentley, PA-C; and to be unpersuasive.

New regulations about weighing medical opinion evidence apply to claims filed on or after March 27, 2017. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the new regulations, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. *Id.* Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b). In doing so, the

ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

  **A. Dr. Powers**

    On January 2, 2020, Dr. Powers completed a Mental Residual Functional Capacity Assessment ("MRFC") in which he indicated Plaintiff is severely limited in his ability to work in coordination with or proximity to others without being distracted by them, to interact with the general public, to accept instructions and to respond to criticism from supervisors, and to respond appropriately to changes in the work setting. Tr. 617-18. Dr. Powers noted Plaintiff has "moderately severe" limitations in his ability to understand and to remember detailed instructions, to maintain socially appropriate behavior, "to adhere to basic standards of neatness and cleanliness, . . . to complete a normal workday and workweek without interruptions from psychologically based symptoms[,] and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id*. Dr. Powers noted Plaintiff's impairments relate to his diagnosis of Autism and major depressive disorder and "the most impairing are [Plaintiff's] responses to change . . . in work expectations, locations, and supervisory personnel." Tr. 619. Plaintiff's "depressive mood and at times highly critical, cynical impression of others strain interpersonal functioning and require external supports to avoid termination and [to] instead

resol[ve] workplace sources of stress and conflict." *Id.* Dr. Powers noted although Plaintiff had a history of successful employment "that appears to only have been possible due to highly structured and favorable workplace conditions." *Id.*

On December 17, 2020, Dr. Powers submitted a letter in which he noted he had been treating Plaintiff since July 2019. Dr. Powers stated "[t]herapy was and continues to be challenging for [Plaintiff]. Impairments associated mostly with his Autism Spectrum Disorder (ASD) and amplified by his recurrent Depression with anxious distress are prominent and limit his progress." Tr. 674. Dr. Powers noted "these same impairments have <u>seriously and persistently impaired [Plaintiff's] ability to sustain substantial gainful employment</u>." Tr. 675 (emphasis in original). For example, "weather changes that affect how much time [Plaintiff] has to vacuum the front door carpet" at his part-time janitorial job "have been enough to derail him at times." *Id*. Dr. Powers indicated his work with Plaintiff has "intensely focused on strategies to help him just maintain his current very part-time night shift janitorial position." Tr. 675. Dr. Powers noted that at Plaintiff's previous full-time janitorial job "numerous accommodations and supports were provided for him to maintain employment," but when there was "staff turnover" and a change in work sites Plaintiff's "functioning substantially deteriorated . . . [and] he became suicidal." *Id*. Dr. Powers summarized "therapy has been difficult for [Plaintiff] due to his behavioral rigidity, emotional lability, misattribution of the meanings of social interactions, and interpersonal abrasiveness" caused by his impairments and those impairments "continue to significantly interfere with his ability to function in even a supported part-time work setting and preclude his ability to perform such activity on a full-time sustained basis." *Id*.

The ALJ found Dr. Powers' statements to be unpersuasive on the grounds that Plaintiff performs part-time janitorial work and Plaintiff believed he did not have

accommodations at his previous job with Willamette Valley Rehabilitation. Tr. 27. Dr. Powers' opinion, however, was that Plaintiff's conditions preclude his ability to perform his current part-time work on a full-time basis. The fact that Plaintiff is able to perform work 12.5 hours a week does not establish that he is able to perform "sustained, work-related physical and mental activities . . . on a regular and continuing basis despite his limitations." 20 C.F.R. § 404.1520(e). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." Social Security Ruling (SSR) 96-8p, at *1. The Ninth Circuit has held that "[a]n ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled." *Bowen v. Kijakazi*, No. 21-35600, 2022 WL 2610242, at *1 (9th Cir. July 8, 2022)(citing *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020)). In those cases, however, the claimants "engaged in more taxing activities" than their alleged incapacity would suggest. For example, in *Bowen* the claimant "stated that she could not reliably drive or perform household cleaning, but elsewhere she stated that she was able to maintain her home, drive, prepare meals, get her children ready for school, and even complete online coursework 'eight hours a day, every day' . . . until her computer broke." *Id*. In *Barney v. Berryhill*, the claimant worked part time but also engaged in "chopping wood, fishing, and camping." 769 F. App'x 465, 466 (9th Cir. 2019). In *Ford*, the plaintiff's "own testimony established that she was able to work occasional eight-hour shifts." 950 F.3d at 1156. Courts have concluded in circumstances similar to those here that the ALJ erred in relying on a claimant's part-time work to reject medical opinion evidence. *See, e.g., Susan C. v. Kijakazi*, No. 20-CV-04324-TSH, 2021 WL 4553585, at *5 (N.D. Cal. Oct. 5, 2021) (finding error when "[t]he ALJ's decision offers no explanation for how [the plaintiff's] part-time, assisted work activity is inconsistent with Dr. Wilson's limitations which . . . were assessed in the context of a full-time, mandatory work schedule."); *Estrella v. Colvin*, 174 F.

15 – OPINION & ORDER

Supp. 3d 1090, 1105 (D. Ariz. 2016) (ALJ erroneously relied opinion evidence based on Plaintiff's work history that failed to discuss or mention that such work was "done under special conditions."). In addition, the ALJ does not point to an opinion by any treating medical professional that suggests Plaintiff can work full time in any capacity.

Finally, the record reflects Willamette Valley Rehabilitation specifically hires individuals with disabilities. Plaintiff points out that the mission statement of Willamette Valley Rehabilitation is "[t]o provide the best professional vocational services to those adults in our community who, by virtue of their physical or mental limitations, are negatively impacted in their ability to attain or maintain employment." Pl. Brief 11 (quoting https://greatnonprofits.org/org/willamette-valley-rehabilitation-center-inc). Willamette Valley Rehabilitation programs "[p]rovided jobs to persons with disabilities" and "provided services to persons with disabilities including job development, behavior management, and alternative employment rehabilitation." *Id.* In addition, Plaintiff testified at the hearing that in order to obtain the job with Willamette Valley Rehabilitation he had to prove he had a disability by submitting paperwork from a treating therapist. Tr. 64-5. The record also reflects that even with the services provided by Willamette Valley Rehabilitation and working in a position designed for individuals with disabilities Plaintiff became extremely anxious and eventually suicidal.

On this record the Court concludes the ALJ erred when she found Dr. Powers' statements to be unpersuasive because the ALJ did not provide clear and convincing reasons for doing so based on substantial evidence in the record.

### B. Dr. Alvord

On October 1, 2019, Dr. Alvord conducted a psychological evaluation of Plaintiff. Dr. Alvord found Plaintiff has cyclothymia, an anxiety disorder, autism spectrum disorder, and

"rule out bipolar II." Tr. 607. Dr. Alvord concluded Plaintiff would not have difficulty performing simple, repetitive tasks but would have moderate difficulty performing detailed and complex tasks, accepting instructions from supervisors, interacting with co-workers and the public, performing work activities on a "consistent basis without special or additional instructions/ accommodations," maintaining regular attendance in the workplace, "completing a normal workday/workweek without interruptions from a psychiatric condition," and dealing with usual stress encountered in the workplace. Tr. 607.

The ALJ found Dr. Alvord's opinion as to all "areas of mental functioning" other than Plaintiff's difficulty interacting with coworkers, supervisors, and the public to be unpersuasive. The ALJ noted Plaintiff is working 12.5 hours per week and "is performing research for characters to develop for a novel that he has been working on." Tr. 27. As noted, however, Plaintiff works 12.5 hours per week as a cleaner and Dr. Alvord evaluated Plaintiff's ability to perform work on a regular and continuing basis (*i.e.* eight hours a day, for five days a week, or an equivalent schedule) despite his limitations. For the reasons noted above, the Court finds the fact that Plaintiff is able to work 12.5 hours per week is not a legally sufficient basis to conclude that Dr. Alvord's opinion is unpersuasive.

On this record the Court concludes the ALJ erred when she found Dr. Alvord's opinion to be unpersuasive because the ALJ did not provide clear and convincing reasons for doing so based on substantial evidence in the record.

**C.    Daniel Bentley, PA-C**

On January 17, 2020, Bentley completed a MRFC in which he indicated Plaintiff is severely limited in his ability to work in coordination with or proximity to others without being distracted by them, "to complete a normal workday and workweek without interruptions

from psychologically based symptoms," to "perform at a consistent pace without an unreasonable number and length of rest periods," to interact with the general public, and to travel in unfamiliar places or to use public transportation. Tr. 622-24. Bentley noted Plaintiff is "moderately severe[ly]" limited in his ability to accept instructions and to respond appropriately to criticism from supervisors, and to set realistic goals or make plans independently of others." Tr. 623-24. Bentley explained Plaintiff "is on the Autism spectrum. Social interactions are very difficult for him. . . . He is uncomfortable around others, rigid, procedural, and very easily distracted." Tr. 624 (emphasis in original). Bentley stressed that Plaintiff is "very anxious around others . . . to a nonfunctional degree . . . [and] very anxious by himself, really, too." *Id*.

On February 15, 2021, Bentley submitted a letter in which he noted that due to his impairments Plaintiff "struggles with certain social norms (such as reciprocal speech . . .) and rigidity of interpretation that often add to his woes, especially when dealing with directions and feedback." Tr. 758. Bentley stated that aside from his communication issues Plaintiff also "suffers from one of the most intractable cases of depression that [Bentley has] seen. Despite earnest participation with therapy and medications for decades." *Id*.

The ALJ found Bentley's statements to be unpersuasive on the basis that Plaintiff has worked part-time as a cleaner since December 2019 and there is "no evidence to support [Bentley's] opinions that indicate [Plaintiff] is unable to function as a cleaner, which is unskilled work involving one coworker, and one supervisor that he has limited contact with while performing the job." Tr. 27. As noted, however, Plaintiff works 12.5 hours per week as a cleaner and Bentley's MRFC evaluated Plaintiff's ability to perform work on a regular and continuing basis (*i.e.* eight hours a day, for five days a week, or an equivalent schedule) despite his limitations. For the reasons noted above, the Court finds that Plaintiff's ability to work 12.5

18 – OPINION & ORDER

hours per week is not a legally sufficient basis to conclude that Bentley's opinion is unpersuasive.

## IV. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court. *Harman*, 211 F.3d 1178.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting . . . evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id*. The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id*. at 1178 n.2.

Here further administrative proceedings are necessary for the ALJ to evaluate Plaintiff's testimony, the lay-witness statements, and the opinions of PA-C Bentley and Drs. Powers and Alvord as well as and to determine whether Plaintiff is disabled. Accordingly, the Court remands this matter to the Commissioner for further administrative proceedings.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED:\_\_January 3, 2023_____

_____
MARCO A. HERNÁNDEZ
United States District Judge

20 – OPINION & ORDER